Sawyer *v.* Fisher.

It must appear that the justices were selected according to law. In this case it does not so appear. R. S. c. 148, § 46.

The justices have no power to legalize the service of the notice upon strangers, nor to take jurisdiction without service upon him, whom the law requires to be notified.

*Abbott,* for defendant.

---

### SAWYER *versus* FISHER.

The statute invalidating unrecorded mortgages of personal property does not extend to liens.

When the common law *itself* raises a lien, the possession must be continued.

Liens may be created by contract.

Such contract may stipulate the mode in which the lien shall be effectuated, continued or rescinded.

If it appear in a written contract, that the parties intended to establish a lien, *that intent is to prevail,* unless prohibited by the rules of law.

When it is stipulated, in the contract of sale of personal property, that the vendor shall retain a lien till payment, *there is no rule of* law to defeat that stipulation.

TROVER for 500 mill-logs.

A contract had been made between the plaintiff and M. Hildreth as follows: —

That the said Sawyer has sold, or agreed to sell said Hildreth

a certain lot of mill-logs, cut by the said Sawyer the past winter on Day's Academy Grant, surveyed by Dan'l S. Webb, as follows, viz : — 2906 logs marked A, to make 501,960 ft. at 9,00=$4517,64. For which said Hildreth has given said Sawyer notes of hand as follows, viz : —

One dated Dec. 26, 1848, payable in 6 months, for $1505,88
One   "      "      "      "        "     " 9    "      " 1505,88
One   "      "      "      "        "     " 12   "      " 1505,88

4517,64

"It is further understood by said parties, that said Sawyer shall retain and hold a full and perfect lien on said logs and lumber manufactured therefrom, as collateral security for the aforesaid notes, and said Sawyer has, or will turn the logs out of the lake free of expense to said Hildreth, and said Hildreth is to pay all expenses below the lake." The notes are unpaid. Some of the logs had been floated down the river to a place of market, and the defendant had purchased 199 of them from Hildreth, and converted them to his own use.

The case was submitted to the court. If the action is maintainable, it is to go to a jury ; otherwise a nonsuit is to be entered.

*Hutchinson*, for plaintiff.

The sale was conditional ; if not, it was but a contract to sell. *Tibbetts* v. *Towle*, 12 Maine, 341 ; *Oaks* v. *Moore*, 24 Maine, 214 ; *Whipple* v. *Gilpatrick*, 19 Maine, 427 ; *Porter* v. *Foster*, 20 Maine, 252 ; *George* v. *Stubbs*, 26 Maine, 243 ; *Jones* v. *Baldwin*, 12 Pick. 316.

The word " lien," is not used in the common law sense ; but, in connection with " collateral security," it imports a conditional sale.

Contracts will be construed according to the subject-matter and the situation of the parties. 20 Pick. 150 ; 19 Maine, 399 ; 25 Maine, 401 ; 26 Maine, 531.

It was not a mortgage. If so, it would have been differently expressed. The property was always in the plaintiff.

*Abbott*, for the defendant, contended that there was a perfected sale from the plaintiff to Hildreth. He received negotiable notes in payment. He delivered the logs, by turning them out of the lake. Nothing remained to be done to make them marketable. Logs, when in the river, are at market.

The plaintiff's pretended lien was invalid. It only claimed to be collateral security. It was never recorded. To give it effect, would rescind the statute relative to the recording of mortgages of personal property, and take away all safety from purchasers.

The case cited by plaintiff's counsel, *Oaks* v. *Moore*, 24 Maine, 214, will, on examination, be found with us.

*Bronson*, in reply.

The plaintiff once owned the logs. There is no evidence that he ever parted with the possession, until defendant took them. Till then, the plaintiff held them in the usual mode. Even if the contract was a mortgage, there was such a possession in the plaintiff, as dispensed with a registry. The contract gave to Hildreth no authority to take possession. It imported that, if Hildreth should pay, the logs were to be his ; otherwise, not ; and that meanwhile he should hold them for the plaintiff. He had no power to sell. A possession and sale by him would have been tortious, until his notes were paid.

SHEPLEY, C. J., orally. — The question is, whether the property passed absolutely, so that a purchaser, who had no notice, could hold as against the plaintiff. It is obvious that it was not the purpose of the parties, that the plaintiff should fully part with his property till payment. The title was intended to pass, subject to incumbrance, subject to a "full and perfect lien." That intent is to prevail, if the rules of law will permit. When the common law *itself* raises a lien, possession must be continued. The law, though it raises the lien, does not continue it. ` But that law does not prohibit parties from making a lien by contract, and stipulating the mode of retaining it and of rescinding it.

It is contended, however, that this contract was a mortgage,

and that it is void by the statute, because not recorded. The statute does not embrace liens. If this view exposes innocent purchasers to loss, it is but like various other laws. Many persons have an apparent right to sell property, who could convey only a defective title. Purchasers must explore the history of the property. If the law of *caveat emptor* be unsuitable, it is for the Legislature alone to alter it.

*Action to stand for trial.*